IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00487-PAB-MJW

ELMER MARSH,

Plaintiff,

v.

RICHARD PERSONS, et al.,

Defendants.

---

**RECOMMENDATIONS ON
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 5)
AND
PLAINTIFF'S MOTION TO WAIVE POSTING OF SECURITY (Docket No. 4)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order of Reference to

United States Magistrate Judge issued by District Judge Philip A. Brimmer on

March 30, 2009.  (Docket No. 9).  Now before the court for a report and

recommendation are Plaintiff's Motion for Preliminary Injunction (Docket No. 5), a

Memorandum of Law in Support (Docket No. 6), and Plaintiff's Motion to Waive Posting

of Security (Docket No. 4).  Defendants filed a response to each motion (Docket Nos.

29 and 30, respectively), and plaintiff filed a reply to each response (Docket Nos. 34

and 33, respectively).  The court has carefully considered all of these motion papers as

well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court

has taken judicial notice of the court file.  The court now being fully informed makes the

following findings, conclusions, and recommendations.

Because the plaintiff is proceeding without counsel, the court has construed his pleadings liberally.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court, however, should not be the pro se litigant's advocate, nor should the court "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing Hall, 935 F.2d at 1110).

**Plaintiff's Allegations**

In his Prisoner Complaint (Docket No. 3), brought pursuant to 42 U.S.C. § 1983, the pro se incarcerated plaintiff asserts the following.  He has been diagnosed with chronic renal insufficiency nearing the end stage, and a fistula was placed in his left wrist for dialysis.  On May 15, 2008, Dr. Rina Shinn determined that plaintiff needed a left cimino fistula revision to ameliorate swelling and pain, and she performed the revision on May 22, 2008.  She noted in her report that "[o]n examination, the patient was found to have maturation of the cimino fistula up to the fistulization of the dorsal vein of the left hand.  The point of obstruction was at the point of the handcuff site.  It is possible that handcuffing over the AV fistula has resulted in the occlusion of the fistula and the redirected of the flow to the dorsal vein of the left hand.  For this reason, the patient is undergoing revision."  Dr. Shinn issued an order that no metal handcuffs be used on the plaintiff.   Thus, on June 30, 2008, during a transport to the Colorado Mental Health Institute, the Correctional Transportation Unit used a leather-type restraint on plaintiff.

3

Another follow-up was scheduled the following month, on July 31, 2008.  While plaintiff was waiting transport that day, he explained to defendant Sergeant John Doe that there was a doctor's order than no metal cuffs be used, and he advised Doe to look in the medical file or contact the medical department.  Doe told plaintiff he would do neither and directed plaintiff to cuff-up or refuse to go.  Plaintiff advised that the cuffs were on too tight.  At the follow-up, Dr. Shinn noted "left hand fistula failure, plus hand swelling, red, tight handcuff marks."  She once again issued a medical order that plaintiff "[i]s never to have metal cuffs on left wrist, only soft cuffs, loose leather cuffs allowed."  Dr. Shinn explained the order to defendants Sergeant John Doe and C.O. John Doe, but neither fulfilled their duty to notify all parties that plaintiff was never to have metal cuffs on.  Plaintiff's left wrist/hand were not cuffed on the return trip.

Plaintiff filed a medical grievance on August 3, 2008, requesting that the Colorado Department of Corrections follow Dr. Shinn's medical order.  On August 15, 2008, plaintiff was called to the medical clinic to discuss cuffing arrangements. Defendant Renee Martinez explained to plaintiff "that I went through your medical file and I am aware of your criminal past, so it is my decision that you wear metal cuffs regardless of Dr. Shinn's orders.  You have no choice in the matter."  Martinez then explained to plaintiff that she was going to issue a permit that plaintiff's left wrist be wrapped to protect it during transport.  Plaintiff then explained to Martinez that such procedure would not alleviate the pain caused by handcuffing because of a pre-existing injury that limited the mobility of his left shoulder and left forearm.  He also told her that wrapping the left wrist would be futile for purposes of protection because of the cuffing procedures used by transport officers.  Martinez said, "Let us try it anyway."

4

On August 19, 2008, plaintiff was awaiting transport to St. Mary Corwin Hospital and tried to explain to Sergeant Willie that he had a doctor's order that no metal cuffs be used on him, but plaintiff was cuffed.  One of the two officers told plaintiff and back-gate officers that he was just following defendant Captain Richard Persons' orders that he use proper cuffing procedures on plaintiff.  Dr. Shinn noted that plaintiff was doing well for about five weeks and then started to develop another pulsating vein in the left hand.

On September 24, 2008, plaintiff was mistakenly transported when he was not scheduled for an appointment.  During such transport, the two officers used a leather-type restraint on plaintiff.

Two days later, he was to be transported again, and plaintiff explained to the two officers that he had a doctor's order than no metal cuffs be used on him, but plaintiff was nevertheless cuffed-up.  Plaintiff told the officers that the cuffs were on too tight and hurting his left hand.  One of the officers told plaintiff that he was just following Persons' orders that proper cuffing procedures be used on plaintiff.  The medical exam that followed revealed left hand swelling following left radiocphalic fistual placement.

On September 29, 2008, plaintiff was once again transported and was cuff-ed up despite his explanations to the officers and his complaint that the cuffs were on too tight and hurting his left hand.  Once again, one of the officers told plaintiff that they were just following Persons' orders to use proper cuffing procedures on plaintiff.  Dr. Shinn determined that plaintiff needed another revision to left cimino fistula.

Plaintiff was similarly cuffed and given a similar explanation by an officer when he was transported on November 4, 2008.  Plaintiff once again complained that the cuffs were on too tight and hurting his left hand.  Plaintiff was kept at "TCF" for three days

because of a very painful and swollen left hand.

Yet again, on November 25, 2008, plaintiff was similarly cuffed and received the same explanation from one of the officers.  Plaintiff received the revision at the hospital the following day.  Dr. Shinn determined that when plaintiff was nearing dialysis time, he could have an AV graft placement of the left forearm.  Plaintiff was handcuffed on the trip back to the correctional facility.

Because of the handcuffing procedures used on the plaintiff, he suffered severe pain for a period of 118 days, and the defendants did nothing to abate the pain or hand swelling.  In addition, plaintiff's left wrist is extremely hypersensitive due to interior scar tissue, and any type of pressure, such as handcuffing, causes "unimaginable pain and suffering."  (Docket No. 3).  Plaintiff also believes he could die before he receives the AV graft due to defendant's deliberate indifference to his serious medical needs.

Plaintiff seeks declaratory, injunctive, and monetary relief.

**Plaintiff's Motion for a Preliminary Injunction**

Plaintiff now seeks a preliminary injunction pursuant to Fed. R. Civ. P. 65(a).  (Docket No. 5).  He asks the court to "order defendants, their successors, agents, employees, and all person acting in concert with them to provide plaintiff the use of leather type restraint well in transport, and that plaintiff not be moved from this facility."  (Docket No. 5 at 2).

Plaintiff first claims that there is a reasonable likelihood that he will prevail on the merits, asserting that for more than 118 days, defendants have denied him the opportunity to be free from pain by their cuffing procedures, and in so doing have acted with deliberate indifference in violation of his Eighth Amendment rights.  Furthermore,

6

he asserts there is a substantial threat of irreparable harm if the injunction is not

granted, claiming that as a result of the constant cuffing with metal handcuffs, he has

suffered and will continue to suffer serious physical injury.  He contends that any

remedy at law for his injury would be inadequate.  Furthermore, he asserts that the

threatened injury to him outweighs any harm the proposed injunction may cause

defendants.  Finally, he contends that the public interest will not be disserved by

granting the injunction, and that to the contrary, the public interest is well served by

protecting the constitutional rights of all of its members.

    In addition, plaintiff claims that defendants have a "de facto policy of moving

inmates from this facility who file lawsuits. . . .  Because it is a de facto policy plaintiff is

unable to establish such policy without the aid of discovery and an attorney."  (Docket

No. 5 at 1).  The court notes, however, that plaintiff remains incarcerated in Freemont

Correctional Facility ("FCF") where he was housed when he commenced this action five

months ago.  Plaintiff contends that if he is moved from FCF, he will be unable to

continue this lawsuit because he lacks the ability to understand the law and has limied

reading abilities.

**<u>Analysis</u>**

    Injunctive relief is an extraordinary remedy that should be granted only when the

moving party clearly and unequivocally demonstrates its necessity.  <u>See</u> <u>Schrier v.</u>

<u>University of Colo.</u>, 427 F.3d 1253, 1258 (10th Cir. 2005).  In the Tenth Circuit, the party

requesting injunctive relief must establish that: (1) the party will suffer irreparable injury

unless the injunction issues; (2) the threatened injury outweighs whatever damage the

proposed injunction may cause the opposing party; (3) the injunction, if issued, would

not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.  Id.  It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." Schrier, 427 F.3d at 1258-59 (citation and quotations omitted).

This court also "considers well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. . . .   Courts should grant injunctive relief involving the management of prisons, including medical care, only under exceptional and compelling circumstances."  Walker v. Meyer, 2009 WL 1965493, *4 (D. Colo. July 8, 2009) (citations omitted).

Here, plaintiff seeks a preliminary injunction requiring that leather-type restraints be used in transport and that he not be moved from FCF.  Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied.  Schrier, 427

8

F.3d at 1258.  "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'"  Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003).  The moving party "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm."  Id. (citation omitted).  Here, this court finds that the plaintiff has failed to meet the heavy burden required to obtain injunctive relief.

First, with regard to the restraints to be used in transport, plaintiff has not shown that he is facing immediate and irreparable harm.  While plaintiff's treating doctor, Dr. Shinn previously instructed that plaintiff was not to have a metal cuff to his left hand, she subsequently rescinded such order and agreed with a corrections management team's suggestion that plaintiff could be transported to his medical appointments in loose metal cuffs with loose kerlix bandaged wrapped wrists.  (See Docket Nos. 29-6 and 29-7, Defs.' Ex. 5 and 6).  Furthermore, because the cimino fistula was malfunctioning and did not mature, plaintiff underwent a left ciminio ligation on November 26, 2008, and the fistula was closed.  (Docket No. 29-8 at 2, Defs.' Ex. 7) Dr. Shinn reported on December 8, 2008, that "[o]n today's examination the incision line has healed very nicely without any sign of infection **and the patient no longer has any swelling of the left hand**.  Suture was removed and Steri-Strips were applied.  The patient needs to be followed up as needed.  **The patient is currently not in the need of dialysis access and if he is nearing the end-stage renal failure requiring dialysis access, we will plan on placing Cortex AB graft on the left forearm.**" (Docket No. 29-8 at 2, Defs.' Ex. 7) (emphasis added).

9

Based upon this finding, plaintiff's motion for injunctive relief should be denied. In addition, the court notes that it agrees with defendants that the relief sought by plaintiff, namely alteration of the cuffing procedures established by the management team and agreed to by his physician, would alter the status quo rather than preserve it. Such an injunction is not favored.

With regard to plaintiff's request that he not be moved due to an alleged "de facto policy of moving inmates from this facility who file lawsuits," the possibility of retaliation is simply too speculative to justify granting plaintiff's request for a preliminary injunction. "[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages. . . . **Purely speculative harm will not suffice** . . . ." RoDa Drilling Co v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009) (emphasis added). See Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003) (agreeing with the proposition that "purely speculative harm does not amount to irreparable injury" and holding "that a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative"); Maximus, Inc. v. Thompson, 78 F.Supp.2d 1182, 1189 (D. Kan. 1999) ("Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction."). See also Sims v. New, 2008 WL 5044554, *2 (D. Colo. Sept. 2, 2008) (inmate's speculation that he *may* suffer acts of retaliation, including a transfer, without more does not establish irreparable harm for purposes of imposing injunctive relief). Furthermore, as noted above, plaintiff commenced this action five months ago, and he has yet to be

10

transferred.  Plaintiff has provided no evidence of any "de facto policy" of transferring inmates who commence litigation.

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (Docket No. 5) be denied.  If that recommendation is accepted, then it is further

**RECOMMENDED** that Plaintiff's Motion to Waive Posting of Security (Docket No. 4) be denied as moot.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: July 27, 2009                        s/ Michael J. Watanabe
      Denver, Colorado                   Michael J. Watanabe
                                        United States Magistrate Judge