IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00487-PAB-MJW

ELMER MARSH,

Plaintiff,

v.

JOHN DOE, in his individual and official capacities, as a Colorado Department of Corrections Transportation Sergeant,
JOHN DOE, in his individual and official capacities, as a Colorado Department of Corrections Correctional Officer, and
RENEE MARTINEZ, Health Services Administrator, in her individual capacity,

Defendants.

---

**RECOMMENDATIONS ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 95)
and
MOTION TO SUBSTITUTE DEFENDANT JOHN DOE, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES, AS A COLORADO DEPARTMENT OF CORRECTIONS
OFFICER (Docket No. 121)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This case was referred to the undersigned pursuant to an Order of Reference to

United States Magistrate Judge issued by District Judge Philip A. Brimmer on

March 30, 2009.  (Docket No. 9).

Now before the court for a report and recommendation are defendants' Motion

for Summary Judgment (Docket No. 95) (and Brief in Support - Docket No. 96) and

plaintiff's Motion to Substitute Defendant John Doe, in His Individual and Official

Capacities, as a Colorado Department of Corrections Officer (Docket No. 121).

Plaintiff, though pro bono counsel, filed a response in opposition to the summary judgment motion (Docket No. 109), and defendants filed a reply (Docket No. 124). Defendants filed a response to the plaintiff's motion to substitute (Docket No. 123), and plaintiff filed a brief in support of his motion (Docket No. 130).

The court has carefully considered all of these motion papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court's file.  The court now being fully informed makes the following findings, conclusions, and recommendations.

**Plaintiff's Allegations**

In his Prisoner Complaint (Docket No. 3), brought pursuant to 42 U.S.C. § 1983, the plaintiff (who at the time was proceeding pro se) asserted the following.

Plaintiff has been diagnosed with chronic renal insufficiency nearing the end stage, and a fistula was placed in his left wrist for dialysis.  On May 15, 2008, Dr. Rina Shinn determined that plaintiff needed a left cimino fistula revision to ameliorate swelling and pain, and she performed the revision on May 22, 2008.  She noted in her report that "[o]n examination, the patient was found to have maturation of the cimino fistula up to the fistulization of the dorsal vein of the left hand.  The point of obstruction was at the point of the handcuff site.  It is possible that handcuffing over the AV fistula has resulted in the occlusion of the fistula and the redirected of the flow to the dorsal vein of the left hand.  For this reason, the patient is undergoing revision."  Dr. Shinn issued an order that no metal handcuffs be used on the plaintiff.   Thus, on June 30, 2008, during a transport to the Colorado Mental Health Institute, the Correctional Transportation Unit used a leather-type restraint on plaintiff.

Another follow-up was scheduled the following month, on July 31, 2008. While plaintiff was waiting transport that day, he explained to Sergeant John Doe that there was a doctor's order that no metal cuffs be used, and he advised Doe to look in the medical file or contact the medical department. Doe told plaintiff he would do neither and directed plaintiff to cuff-up or refuse to go. Plaintiff advised that the cuffs were on too tight. At the follow-up, Dr. Shinn noted "left hand fistula failure, plus hand swelling, red, tight handcuff marks." She once again issued a medical order that plaintiff "[i]s never to have metal cuffs on left wrist, only soft cuffs, loose leather cuffs allowed." Dr. Shinn explained the order to Sergeant John Doe and defendant C.O. John Doe, but neither fulfilled their duty to notify all parties that plaintiff was never to have metal cuffs on. Plaintiff's left wrist/hand was not cuffed on the return trip.

Plaintiff filed a medical grievance on August 3, 2008, requesting that the Colorado Department of Corrections follow Dr. Shinn's medical order. On August 15, 2008, plaintiff was called to the medical clinic to discuss cuffing arrangements. Defendant Renee Martinez explained to plaintiff "that I went through your medical file and I am aware of your criminal past, so it is my decision that you wear metal cuffs regardless of Dr. Shinn's orders. You have no choice in the matter." Martinez then explained to plaintiff that she was going to issue a permit that plaintiff's left wrist be wrapped to protect it during transport. Plaintiff then explained to Martinez that such procedure would not alleviate the pain caused by handcuffing because of a pre-existing injury that limited the mobility of his left shoulder and left forearm. He also told her that wrapping the left wrist would be futile for purposes of protection because of the cuffing procedures used by transport officers. Martinez said, "Let us try it anyway."

On August 19, 2008, plaintiff was awaiting transport to St. Mary Corwin Hospital and tried to explain to Sergeant Willie that he had a doctor's order that no metal cuffs be used on him, but plaintiff was cuffed. One of the two officers told plaintiff and back-gate officers that he was just following defendant Captain Richard Persons' orders that he use proper cuffing procedures on plaintiff. Dr. Shinn noted that plaintiff was doing well for about five weeks and then started to develop another pulsating vein in the left hand.

On September 24, 2008, plaintiff was mistakenly transported when he was not scheduled for an appointment. During such transport, the two officers used a leather-type restraint on plaintiff.

Two days later, he was to be transported again, and plaintiff explained to the two officers that he had a doctor's order than no metal cuffs be used on him, but plaintiff was nevertheless cuffed-up. Plaintiff told the officers that the cuffs were on too tight and hurting his left hand. One of the officers told plaintiff that he was just following Persons' orders that proper cuffing procedures be used on plaintiff. The medical exam that followed revealed left hand swelling following left radiocphalic fistual placement.

On September 29, 2008, plaintiff was once again transported and was cuffed-up despite his explanations to the officers and his complaint that the cuffs were on too tight and hurting his left hand. Once again, one of the officers told plaintiff that they were just following Persons' orders to use proper cuffing procedures on plaintiff. Dr. Shinn determined that plaintiff needed another revision to left cimino fistula.

Plaintiff was similarly cuffed and given a similar explanation by an officer when he was transported on November 4, 2008. Plaintiff once again complained that the cuffs were on too tight and hurting his left hand. Plaintiff was kept at "TCF" for three days

because of a very painful and swollen left hand.

Yet again, on November 25, 2008, plaintiff was similarly cuffed and received the same explanation from one of the officers. Plaintiff received the revision at the hospital the following day. Dr. Shinn determined that when plaintiff was nearing dialysis time, he could have an AV graft placement of the left forearm. Plaintiff was handcuffed on the trip back to the correctional facility.

Because of the handcuffing procedures used on the plaintiff, he suffered severe pain for a period of 118 days, and the defendants did nothing to abate the pain or hand swelling. In addition, plaintiff's left wrist is extremely hypersensitive due to interior scar tissue, and any type of pressure, such as handcuffing, causes "unimaginable pain and suffering." (Docket No. 3). Plaintiff also believes he could die before he receives the AV graft due to defendant's deliberate indifference to his serious medical needs.

Plaintiff seeks declaratory, injunctive, and monetary relief.

**MOTION FOR SUMMARY JUDGMENT**

Defendants Martinez and Persons moved for summary judgment in their favor and against plaintiff on all claims. After the motion was filed, however, a Stipulated Notice of Dismissal of Defendant Richard Persons (Docket No. 111) was filed. Therefore, this court will address the summary judgment motion only as it pertains to the claims against defendant Martinez, the only remaining named defendant in this action.

The allegations against defendant Martinez in the Prisoner Complaint are as follows:

. . .

19. On August 15, 2008, plaintiff was called to medical clinic to discuss cuffing arrangments [sic].

20. Defendant Renee Martinez explained to plaintiff, "That I went through your medical file and I am aware of your criminal past, so it is my decision that you wear metal cuffs regardless of Dr. Shinn's orders. You have no choice in the matter."

21. Defendant Martinez then explained to plaintiff that she was going to issue a permit that his left wrist be wraped [sic] to protect it during transport.

22. Plaintiff then explained to defendant Martinez that suggested procedure would not alleviate the pain caused by handcuffing because of a preexisting injury that limited the mobility of his left shoulder and left forearm. He also told her that wrapping the left wrist would be futile for purposes of protection, because of the cuffing procedures used by "CTU" officers, see paragraph 12. She said, "Let us try it anyway."

. . .

1. Claim One: DEFENDANTS' DELIBERATE INDIFFERENCE

   Supporting Facts: Plaintiff supports the following claim by reference to the previous paragraphs in section C of this complaint.

   The deliberate indifference of defendants . . . Renee Martinez, Medical Administor [sic], to plaintiff's serious medical condition caused by the continues [sic] handcuffing of plaintiff in direct conflict of Dr. Shinn's medical orders and plain sight view of harm caused by cuffing deprived him of his rights under the Eight [sic] Amendment of the United States Constitution.

(Docket No. 3 at 5-6, 9).

Defendant Martinez asserts that she is entitled to summary judgment because there is no evidence that she ignored a serious risk of substantial harm, the use of full restraints to transport prisoners off-site has been found by numerous courts to be penologically justified, there is no evidence that she personally participated in any action allegedly causing harm to the plaintiff, and she is entitled to qualified immunity.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

8

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. . . . The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, *and* [2] that the Defendants' delay in meeting that need caused him substantial harm. Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about

9

and disregarded a substantial risk of harm to his health or safety. Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

Here, this court finds that there is no genuine issue of material fact with respect to the subjective element of the plaintiff's deliberate indifference claim. There is no evidence that defendant Martinez disregarded a substantial risk of harm to the plaintiff's health or safety. To the contrary, the undisputed evidence shows that Martinez had no authority to make security decisions such as transporting without cuffs, but she nevertheless took affirmative steps to protect the plaintiff from injury while he was being transported. Martinez testified at her deposition that Dr. Creany, plaintiff's doctor at the correctional facility, asked her to talk to the management team about the no cuffing order from Dr. Shinn, plaintiff's outside doctor. It was Martinez's responsibility to see what could be done to protect the plaintiff and also provide the security needed on his outside transports. (Martinez Dep. Tr., Docket Nos. 96-4 and 109-4, Tr. at 56, lines 13-17). The security major had stated that at no point is there ever an exception to not cuffing an offender when going out on medical trips. (Martinez Tr. at 56, lines 10-12) See SEALED Docket No. 98-3 at 4. Martinez did take the issue to the management team and then called Dr. Shinn. (Martinez Tr. at 56, lines 7-9, 23-25; 89, lines 12-16). According to Martinez, Freemont Correctional Facility did not have leather restraints, Dr. Shinn was under the misconception that everyone had leather restraints, and Martinez thus discussed various options with Dr. Shinn. (Martinez Tr. at 110, lines 9-24). She and Dr. Shinn made a joint decision to wrap plaintiff's wrist with Kerlix gauze to prevent the cuffs from bearing down on plaintiff's skin, and Dr. Shinn noted that a metal cuff could be used on the plaintiff's left hand if the wrist was protected and a loose cuff was

used. (Martinez Tr. at 57, lines 20-25; 117, lines 10-23; 123, lines 16-23). Dr. Creany agreed with that order by Dr. Shinn. (Martinez Tr. at 123, line 23). According to Martinez, Dr. Shinn did not specify if loose cuff meant one or two fingers between the cuff and plaintiff's wrist, but that is how the nurses routinely check for circulation (Martinez Tr. at 124, lines 21-25). Moreover, Dr. Shinn testified at her deposition that the "one-finger rule" would be loose enough to protect the surgical site. (Docket No. 124-1, Shinn Dep. Tr. at 96, line 16, through 97, line 6). In addition, Dr. Shinn asked if Martinez could order that plaintiff apply counter-pressure to rest hands on his legs to help keep the cuffs from pushing on the top part. (Martinez Tr. at 117, lines 18-23). Martinez claims she explained the counter-pressure directive to plaintiff, she gave him a direct order to apply the counter-pressure suggested by Dr. Shinn, and plaintiff stated his understanding (Martinez Tr. at 117, line 24, to 118, lines 1-4, 14), but plaintiff disputes that he was given such instruction. Martinez also gave plaintiff a permit for the Kerlix wrapping. (Martinez Tr. at 118, line 1). While Martinez apparently did not mention to Dr. Shinn that a "black box" would be used with the restraints during plaintiff's outside transport, Dr. Shinn is familiar with such a "black box," and she did not have a problem with security using it if it did not actually affect the integrity of the surgical site. (Docket No. 124-1, Shinn Tr. at 70, lines 5-18; 88, lines 5-21).

Although plaintiff claims the cuffs were too tight and he was not told about the counter-pressure, Martinez demonstrated to her staff the cuffing protocol, including the counter-pressure and the one-finger rule. (See Martinez Tr. at 125, lines 17-24). The customary procedure was for the nursing staff to apply the Kerlix, the security staff then applied the handcuff, and the nursing staff then utilized the "one-finger rule" to check for

circulation. (Martinez Tr. at 124, line 12, through 125, line 7). Furthermore, Martinez was never present for the cuffing of the plaintiff; instead, her staff was present. (Martinez Tr. at 125, lines 11-13). Therefore, Martinez was never personally involved in the actual cuffing of the plaintiff. Nevertheless, she took affirmative steps to ensure his wrist was protected in the manner agreed to by plaintiff's outside doctor and that the cuff was appropriately loose. Moreover, Martinez had no authority to make or recommend a security decision, such as not cuffing an inmate during transport. (Martinez Tr. at 120, lines 12-16). Instead, such a security decision needed approval up the chain of command, i.e., the security major, the warden, the Captain, the appointing authority for the Central Transport Unit, or at headquarters level. (Martinez Tr. at 57, lines 7-9; 103, lines 11-24; 120, line 24, to 121, line 3).

Furthermore, plaintiff has not established that he has suffered a sufficiently serious harm because of Martinez's actions. Dr. Shinn's unrebutted testimony is that nothing done by Martinez or any corrections employee caused the plaintiff's fistula to fail or otherwise harmed plaintiff's wrist. (Docket No. 109-1, Shinn Tr. at 27, line 25 to 29, line 13; 52, lines 4-13; 100, line 12, to 101, line 8). While she originally thought that the cuffing had caused the fistula blockage, she later ordered a venogram to see where the true blockage was, and after the venogram was done, she changed her opinion that the cuffing caused the occlusion. She found it "hard to believe," unless plaintiff was in handcuffs all the time, that the cuffing procedures used on the plaintiff between 2006 and 2008 had any impact on the maturation of the fistula because "the vein did not fistulize because of internal pressure points." (Shinn Tr. at 28, line 9, through p. 29, line 13).

12

In sum, viewing the evidence in a light most favorable to the plaintiff and drawing all reasonable inferences in plaintiff's favor, a reasonable jury could not return a verdict for plaintiff and against Martinez on plaintiff's Eight Amendment claim.

The court notes that in his Response to the summary judgment motion, plaintiff claims that he is seeking injunctive relief from Martinez and her successor that includes being provided additional occupational therapy[1] that was ordered by Dr. Shinn on July 20, 2009.  Significantly, that order was issued after the Prisoner Complaint was filed in February 2009, and moreover, it was issued after defendant Martinez left Freemont Correctional Facility as the Health Services Administrator in May 2009.  (Docket No. 109-4 at 4, Martinez Tr. at 22, line 13).  Furthermore, while the plaintiff seeks injunctive relief in his Prisoner Complaint, he significantly did not seek any injunctive relief concerning medical care, including occupational therapy.  Instead, in his pleading, plaintiff merely seeks "perliminary and permanent injunctions ordering defendant[] . . . Martinez . . . and all persons acting in concert with them to protect plaintiff from further harm if another fistula is placed on him; implement adequate procedures that take into account security, safety, and health concerns of defendants and plaintiff."  (Docket No. 3 at 11).  Plaintiff has never moved to amend or supplement his pleading to include the injunctive relief he seeks in his Response to the summary judgment motion.  In addition, as found below, plaintiff did not sue Martinez in her official capacity.

---

[1] Plaintiff notes in his Response that he was seen by an occupational therapist, Darcy Stewart, on September 11, 2009, but he has not since had any further occupational therapy.  (Docket No. 109 at 11).

**MOTION TO SUBSTITUTE**

In his Motion to Substitute Defendant John Doe, in his Individual and Official Capacities, as a Colorado Department of Corrections Officer (Docket No. 121), plaintiff, through counsel, seeks to substitute Lynn Erickson, the current Health Services Administrator at Fremont Correctional Facility, in her official capacity only, for "John Doe, in his individual and official capacities, as a Colorado Department of Corrections Officer." This court agrees with the defendants that this motion should be denied. First, Lynn Erickson is not a Correctional Officer who "was responsible for taking plaintiff on a day trip to the State Hospital in a secure and safe manner." (Docket No. 3, Prisoner Complaint, at 2). Second, substitution under Fed. R. Civ. P. 25(d) is not appropriate under the circumstances presented here.

> Rule 25(d) of the Federal Rules of Civil Procedure provides:
>
> **Public Officers: Death or Separation from Office.** An action does not abate when a public officer <u>who is a party in an official capacity</u> dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d) (emphasis in underscore added).

It is true that until May 2009, defendant Martinez was the official holding the office of Freemont Correctional Facility's Health Services Administrator. Nevertheless, it is clear that plaintiff never brought an official capacity claim against defendant Martinez; instead, she was sued only in her individual capacity. Therefore, there is no current claim against the office of the Health Services Administrator, and Fed. R. Civ. P.

25(d) is inapplicable.

This court recognizes that when the Prisoner Complaint was filed, plaintiff was proceeding without counsel, and the court must thus review his pleading liberally and hold it to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers). However, the court may not construct a legal theory for a pro se plaintiff. See Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues). "The plaintiff's *pro se* status does not entitle him to application of different rules." Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010). Therefore, this court will not construe plaintiff's pro se pleading as stating a claim against the Health Services Administrator in her official capacity when the Prisoner Complaint very clearly indicated that defendant Martinez was being sued only in her individual capacity. Significantly, plaintiff named other defendants in both their individual and official capacities, yet in contrast he named defendant Martinez only in her individual capacity. (See Docket No. 3 at 1).

Furthermore, plaintiff seeks such substitution to obtain prospective injunctive relief, namely, further occupational therapy ordered by Dr. Shinn, but as noted above, in his pleading plaintiff did not seek injunctive relief concerning his medical care; rather,

his prayer for injunctive relief concerned only his transport.

In addition, as noted in the Reply, neither Martinez nor her successor has any control over whether plaintiff receives further occupational therapy.  Martinez supervised the physicians operationally, not clinically, which meant she was responsible for ensuring the doctors came to work on time, awarding them time off, handling scheduling issue, and the like.  (Docket No. 109-4 at 5, Martinez Tr. at 26, lines 9-23).  The Health Services Administrator is responsible for speaking with physicians regarding medical orders only if the order impacts operations and cannot interfere with a physician's management of a patient's medical care.  Here, Dr. Creany agreed with Dr. Shinn's recommendation for occupational therapy, and plaintiff has been seen by an occupational therapist.  Dr. Creany testified, however, that whether he would order further consultations by an occupational therapist would "depend upon how [plaintiff] did with the treatments, if he was compliant with the treatments, was he making gains with the treatments, all this sort of thing."  (Docket No. 109-2, Creany Dep. Tr. at 48, lines 2-13).  He would have to assess plaintiff's condition to determine if he was suitable for occupational therapy.  (Creany Tr. at 48, lines 10-13).  As of the time the motion papers were filed, Dr. Creany had not further referred plaintiff to an occupational therapist.  Dr. Creany's failure to do so, however, does not state a claim against Martinez or her successor because the undisputed evidence shows that the Health Services Administrator cannot direct a physician to order such clinical care.

Moreover, defendant notes in the Reply that plaintiff is no longer housed at Freemont Correctional Facility (citing Docket No. 113, Final Pretrial Order, 4. Stipulations, para. 1, which states that plaintiff is an inmate at the Denver Reception

Diagnostic Center in Denver, Colorado) and thus correctly asserts that the Health Services Administrator for Freemont Correctional Facility has no control over the plaintiff's medical care. Plaintiff's claim for such injunctive relief, even if it was made in the Prisoner Complaint, is now moot. See Hamlin v. Smith, 2010 WL 2740119, at *11 (D. Colo. July 12, 2010) (plaintiff's claim for injunctive relief moot based upon his transfer from the facility where the defendants were located) (citing Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010)).

For all of the reasons stated above, substitution should not be permitted.

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that defendants' Motion for Summary Judgment **(Docket No. 95)** be **granted**. It is further

**RECOMMENDED** that Plaintiff's Motion to Substitute Defendant John Doe, in His Individual and Official Capacities, as a Colorado Department of Corrections Officer **(Docket No. 121)** be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

17

**(1985), and also waives appellate review of both factual and legal questions.**

**Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  February 3, 2011                          s/ Michael J. Watanabe
       Denver, Colorado                         Michael J. Watanabe
                                                    United States Magistrate Judge